IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA

| | | |
|---|---|---|
| James Stacey McClellon, | ) | Case No.: 6:20-cv-3216-SAL |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | |
| | ) | |
| Kilolo Kijakazi, Acting | ) | **OPINION AND ORDER** |
| Commissioner of Social Security | ) | |
| Administration, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

This matter is before the court for review of the July 12, 2021 Report and Recommendation of United States Magistrate Judge Kevin F. McDonald (the "Report"), made in accordance with 28 U.S.C. § 636(b) and Local Civil Rule 73.02 (D.S.C.). [ECF No. 19]. In the Report, the Magistrate Judge recommends the Commissioner's final decision denying Plaintiff's claim for Social Security disability benefits be affirmed. *Id.* Plaintiff filed timely objections to the Report, ECF Nos. 20, 25, as well as a Notice of Supplemental Authority and related legal memorandum, ECF Nos. 23, 24. Defendant filed a timely reply to Plaintiff's objections. [ECF No. 21]. For the reasons outlined herein, the court adopts the Report in its entirety.

## REVIEW OF A MAGISTRATE JUDGE'S REPORT

The court is charged with making a *de novo* determination of those portions of the Report to which specific objections are made, and the court

may accept, reject, or modify, in whole or in part, the recommendation of the Magistrate Judge, or recommit the matter to the Magistrate Judge with instructions. *See* 28 U.S.C. § 636(b)(1). A district court, however, is only required to conduct a de novo review of the specific portion of the Magistrate Judge's Report to which an objection is made. *See id.*; Fed. R. Civ. P. 72(b); *Carniewski v. W. Virginia Bd. of Prob. & Parole*, 974 F.2d 1330 (4th Cir. 1992). In the absence of specific objections to portions of the Report, this court is not required to explain its reasons for adopting the recommendation. *See Camby v. Davis*, 718 F.2d 198, 199 (4th Cir. 1983). It must "only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation." *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310, 316 (4th Cir. 2005) (citing Fed. R. Civ. P. 72 advisory committee's note).

"An objection is specific if it 'enables the district judge to focus attention on those issues—factual and legal—that are at the heart of the parties' dispute.'" *Dunlap v. TM Trucking of the Carolinas, LLC*, No. 0:15-cv-4009-JMC, 2017 WL 6345402, at *5 n.6 (D.S.C. Dec. 12, 2017) (citing *One Parcel of Real Prop. Known as 2121 E. 30th St.*, 73 F.3d 1057, 1059 (10th Cir. 1996)). A specific objection to the Magistrate's Report thus requires more than a reassertion of arguments from the pleading or a mere citation to legal authorities. *See Workman v. Perry*, No. 6:17-cv-765-RBH, 2017 WL 4791150, at *1 (D.S.C. Oct. 23, 2017). A specific objection must "direct the court to a

specific error in the magistrate's proposed findings and recommendations."

*Orpiano v. Johnson*, 687 F.2d 44, 47 (4th Cir. 1982).

## DISCUSSION

This court reviews de novo the portions of the Report to which specific written objections have been raised. *Diamond*, 416 F.3d at 315. Plaintiff raises two objections to the report:

1.    The Magistrate Judge erred in finding the ALJ was not required to weigh the Veterans Administration ("VA") disability rating [ECF No. 20]; and

2.    The Magistrate Judge erred in concluding that substantial evidence supported that ALJ's step four and step five findings. *Id.*

Given the specificity of Plaintiff's objections, the court reviews them de novo.

## I.    VA Disability Rating

In the Report, the Magistrate Judge concluded the Administrative Law Judge ("ALJ") did not err in declining to give substantial weight to Plaintiff's 100% VA disability rating or explain why substantial weight was not given. [ECF No. 19 at 10–13]. He noted this case was filed after March 27, 2017, and acknowledged courts within the Fourth Circuit were divided as to whether the holding in *Bird v. Social Sec. Admin.*, 699 F.3d 337 (4th Cir. 2012), as to VA disability ratings, applied to cases filed after March 27, 2017. *Id.* at 11. He concluded the holding in *Bird* relied upon a rescinded Social Security Ruling ("SSR") and regulations that have been amended. *Id.* at 11–12 (citing 20 C.F.R. §§ 404.1505, 404.1512; SSR 06-03p). He further cited language in

the Federal Register providing "[100% VA disability] ratings alone are
neither inherently valuable or persuasive in our disability evaluation because
they give us little substantive information to consider." *Id.* at 12 (quoting 82
Fed. Reg. 5844-01, at 5,849). He found the ALJ thoroughly discussed the
evidence underlying the VA's disability rating, as required pursuant to the
amended regulations. *Id.* at 13.

Plaintiff argues the Magistrate Judge's finding that *Bird* remains good
law is inconsistent with his conclusion that the ALJ was not required to give
substantial weight to the VA disability rating. [ECF No. 20 at 2]. He
maintains the regulatory change did not alter the holding in *Bird* because the
case did not interpret a prior regulation, but instead "followed a line of cases
expounding on what is required from the ALJ to enable the court to conduct
its review." *Id.* (quoting *Rose v. Saul*, No. 7:19-cv-91-BO, 2020 WL 4740479
(E.D.N.C. Aug. 14, 2020)); ECF No. 25 at 1–2. He contends Fourth Circuit
precedent required the ALJ to resolve the material inconsistency between the
conclusion that he was not disabled and the VA's finding that he was
disabled. *Id.* at 3.

The Commissioner argues the ALJ appropriately followed the new,
controlling regulatory framework as to the VA rating decision. [ECF No. 21 at
4]. She maintains *Bird* was decided in the context of prior regulations and
rulings that have been rescinded. *Id.* at 5. She contends the Magistrate Judge

4

rejected the court's findings in *Rose*, as it had failed to consider the SSA's "wide latitude to engage in rulemaking in the absence of an unambiguous term of the Social Security Act to the contrary." *Id.* at 5–6 (citing *Nat'l Cable & Telecomms. Ass'n v. Brand X Internet Servs.*, 545 U.S. 967, 982 (2005)).

In *Bird*, 699 F.3d at 343, the Fourth Circuit found that "[b]ecause the purpose and evaluation methodology of both [the SSA and VA] programs [were] closely related, a disability rating by one of the two agencies [was] highly relevant to the disability determination of the other agency." It specifically held that "in making a disability determination, the SSA must give substantial weight to a VA disability rating." *Id.* However, it recognized "the SSA employs its own standards for evaluating a claimant's alleged disability" and "the effective date for coverage for a claimant's disability under the two programs likely w[ould] vary," such that "an ALJ may give less weight to a VA disability rating when the record before the ALJ clearly demonstrates that such a deviation is appropriate." *Id.*

The Fourth Circuit further elaborated in a subsequent decision, noting "to demonstrate that it is 'appropriate' to accord less than 'substantial weight'" to a decision from a program with a closely analogous purpose and evaluation methodology, "the ALJ must give 'persuasive, specific, valid reasons for doing so that are supported by the record.'" *Woods v. Berryhill*, 888 F.3d 686, 692 (4th Cir. 2018) (citing *McCartey v. Massanari*, 298 F.3d

5

1072, 1076 (9th Cir. 2002) (describing standard for VA decisions); *Chambliss v. Massanari*, 269 F.3d 520, 522 (5th Cir. 2001) (per curium) (explaining that ALJs need not give great weight to VA disability determinations "if they adequately explain the valid reasons for not doing so")).

Consistent with the Magistrate Judge's recommendation, this court and at least one other court within the Fourth Circuit have concluded amendments to 20 C.F.R. § 404.1504 and § 404.1512 and rescission of SSR 06-03p rendered the portion of *Bird* addressing VA disability decisions inapplicable to cases filed after March 27, 2017. *See, e.g., Yonnes S. v. Saul*, No. 1:20-cv-819 (JFA), 2021 WL 2767298, at *8–9 (E.D.Va. Mar. 31, 2021); *Pirolo v. Saul*, No. 5:19-cv-2881-KDW, 2021 WL 389250, at *7–9 (D.S.C. Feb. 4, 2021); *Hagan v. Saul*, No. 9:19-cv-2591-BHH-MHC, 2021 WL 1430914, at *8 (D.S.C. Jan. 15, 2021), adopted by 2021 WL 8730383 (D.S.C. Mar. 9, 2021); *Johnson v. Saul*, No. 6:19-cv-1155-MGL-KFM, 2020 WL 6265092 (D.S.C. June 3, 2020), adopted by 2020 WL 5810523 (D.S.C. Sept. 30, 2020). However, other courts within the Fourth Circuit have followed the reasoning set forth in *Rose*, 2020 WL 4740479, at *3, providing as follows:

> In the ALJ's view, the new regulations superseded the Fourth Circuit's decision in *Bird*. This was error.
>
> The new rules did not supersede the Fourth Circuit's decision in *Bird*, and the ALJ committed reversible error by failing to afford substantial weight to Mr. Rose's 100% VA rating. The ALJ's assumption that the new SSA regulations supplanted Fourth Circuit case law rests on a fundamental misunderstanding of

6

> *Bird* and the cases that preceded it. *Bird* did not interpret a prior
> regulation, alterable by SSA. Rather, *Bird*, followed a line of
> cases expounding on what is required from the ALJ to enable the
> Court to conduct its review.

*See*, *e.g.*, *Teel v. Kijakazi*, No. 4:20-cv-119-D, 2021 WL 5234973, at *3–4

(E.D.N.C. Oct. 18, 2021), adopted by 2021 WL 5143884 (E.D.N.C. Nov. 3,

2021); *Respert v. Kijakazi*, No. 3:20-cv-492-DSC, 2021 WL 4233888, at *3

(W.D.N.C. Sept. 16, 2021); *Carter v. Kijakazi*, No. 1:20-cv-252, 2021 WL

3915009, at *4–6 (M.D.N.C. Sept. 1, 2021), adopted by 2021 WL 4412374

(M.D.N.C. Sept. 27, 2021).

Based on *Rose*, Plaintiff argues the Fourth Circuit did not interpret the

prior regulations in reaching its decision in *Bird*. However, a review of *Bird*

reveals the Fourth Circuit referenced 20 C.F.R. § 404.1504 and §

404.1512(b)(5) and SSR 06-03p in explaining its holding. It wrote the

following:

> SSA directives have explained that the SSA is required to
> consider all record evidence relevant to a disability
> determination, including decisions by other agencies. SSR No. 06-
> 03p, 2006 SSR LEXIS 5, at *17. However, under the regulations
> implementing the Social Security Act, although the SSA will
> accept another agency's disability determination as evidence of a
> claimant's condition, that agency's decision is not binding on the
> SSA. 20 C.F.R. §§ 404.1504, 404.1512(b)(5). Accordingly, under
> the principles governing SSA disability determinations, another
> agency's disability determination "cannot be ignored and must be
> considered." SSR 06-03p, 2006 SSR LEXIS 5, at *17.

*Bird*, 699 F.3d at 343.

7

The version of 20 C.F.R. § 404.1504 applicable at the time of the decision in *Bird* provided:

> A decision by any nongovernmental agency or any other governmental entity about whether you are disabled or blind is based on its rules and is not our decision about whether you are disabled or blind. We must make a disability or blindness determination based on social security law. Therefore, a determination made by another agency that you are disabled or blind is not binding on us.

20 C.F.R. § 404.1504 (effective to Mar. 26, 2017).

> The current version of 20 C.F.R. § 404.1504 provides as follows:

> Other governmental agencies and nongovernmental entities— such as the Department of Veterans Affairs, the Department of Defense, the Department of Labor, the Office of Personnel Management, State agencies, and private insurers—make disability, blindness, employability, Medicaid, workers' compensation, and other benefits decisions for their own programs using their own rules. Because a decision by any other governmental agency or a nongovernmental entity about whether you are disabled, blind, employable, or entitled to any benefits is based on its rules, it is not binding on us and is not our decision about whether you are disabled or blind under our rules. Therefore, in claims filed (see § 404.614) on or after March 27, 2017, we will not provide any analysis in our determination or decision about a decision made by any other governmental agency or nongovernmental entity about whether you are disabled, blind, employable, or entitled to any benefits. However, we will consider all of the supporting evidence underlying the other governmental agency or nongovernmental entity's decision that we receive as evidence in your claim in accordance with § 404.1513(a)(1) through (4).

20 C.F.R. § 404.1504 (effective Mar. 27, 2017).

Although the prior version of § 404.1504 specified other agency decisions were based on their own rules and were not binding on the SSA, it

said nothing as to an ALJ's duty in reconciling his decision with the decision of another agency or nongovernmental entity. *See* 20 C.F.R. § 404.1504 (effective to Mar. 26, 2017). In contrast, the current version specifically provides that the SSA "will not provide any analysis in our determination or decision" as to the other agency's decision. *See* 20 C.F.R. § 404.1504 (effective Mar. 27, 2017).

At the time of the decision in *Bird*, § 404.1512(b) provided: "What we mean by 'evidence.' Evidence is anything you or anyone else submits to us or that we obtain that relates to your claim. This includes, but is not limited to . . . (5) [d]ecisions by any governmental or nongovernmental agency about whether you are disabled or blind." 20 C.F.R. § 404.1512 (b)(5) (all versions effective to April 19, 2015).[1]

A substantive change to § 404.1512 became effective March 27, 2017, resulting in the regulation pertaining to "[r]esponsibility for evidence," as opposed to "[e]vidence." *Compare* 20 C.F.R. § 404.1512 (versions effective to March 26, 2017), *with* 20 C.F.R. § 404.1512 (effective March 27, 2017). The newest version of § 404.1512 no longer specifies what qualifies as evidence.

---

[1] The structure, but not the content of the regulation, was altered to provide: "(b) What we mean by 'evidence.' Evidence is anything you or anyone else submits to us or that we obtain that relates to your claim. (1) Evidence includes, but is not limited to . . . (v) [d]ecisions by any governmental or nongovernmental agency about whether or not you are disabled or blind (see § 404.1504)." 20 C.F.R. § 404.1512(b)(1)(v) (effective April 20, 2015 to March 26, 2017).

Evidence is defined under the amended regulations in § 404.1513(a), which provides:

> What we mean by evidence. Subject to the provisions of paragraph (b), evidence is anything you or anyone else submits to us or that we obtain that relates to your claim. We consider evidence under §§ 404.1520b, 404.1520c (or under § 404.1527 for claims filed (see § 404.614) before March 27, 2017). We evaluate evidence we receive according to rules pertaining to the relevant category of evidence.

The regulation specifies and defines the following categories of evidence: (1) objective medical evidence; (2) medical opinion; (3) other medical evidence; (4) evidence from nonmedical sources; and (5) prior administrative medical findings. 20 C.F.R. § 404.1513(a)(1)–(5). "Decisions" by any governmental or nongovernmental agency about whether you are disabled or blind," specified as evidence in the prior version of § 404.1512, are not mentioned as evidence in § 404.1513. Thus, the regulatory changes applicable in cases filed after March 27, 2017, no longer include VA rating decisions as evidence that must explicitly be considered.

In *Bird*, the Fourth Circuit cited to SSR 06-03p, which explained the following as to disability decisions by other governmental and nongovernmental agencies: "These decisions, and the evidence used to make these decisions, may provide insight into the individual's mental and physical impairment(s) and show the degree of disability determined by these agencies

based on their rules." SSR 06-03p, 2006 WL 2329939, at *7. It further provided:

> Because the ultimate responsibility for determining whether an individual is disabled under Social Security law rests with the Commissioner, we are not bound by disability decisions by other governmental and nongovernmental agencies. In addition, because other agencies may apply different rules and standards than we do for determining whether an individual is disabled, this may limit the relevance of a determination of disability made by another agency. However, the adjudicator should explain the consideration given to these decisions in the notice of decision for hearing cases and in the case record for initial and reconsideration cases.

*Id.* Thus, SSR 06-03p included an explicit instruction to "explain the consideration" given to other agency decisions. However, SSR 06-03p was rescinded effective March 27, 2017. *See* Rescission of SSR 96-2p, 96-5p, and 06-03p, 82 Fed. Reg. 15,263 (Mar. 27, 2017) (stating the rescissions of SSRs 96-2p, 96-5p, and 06-03 were effective "for claims filed on or after March 27, 2017").

Despite significant amendments to the regulations and rescission of the SSR referenced in *Bird*, Plaintiff presents a valid argument that the Fourth Circuit has placed emphasis on similarities between the VA and SSA disability programs that are unrelated to the regulations and SSR. *See Bird*, 699 F.3d at 343. The Fourth Circuit has pointed to the requirement to "include a discussion of which evidence the ALJ found credible and why, and specific application of the pertinent legal requirements to the record

11

evidence" in explaining why an ALJ must provide "persuasive, specific, valid reasons" for deviating from the default rule of giving substantial weight to a disability decision from another agency with a closely related purpose and evaluation methodology. *Woods*, 888 F.3d at 692–93 (quoting *Radford v. Colvin*, 734 F.3d 288, 295 (4th Cir. 2013). Although the Fourth Circuit has not specified, this may reasonably be derived from SSR 96-8p's requirement that an ALJ "explain how any material inconsistencies or ambiguities in the case record were considered and resolved." SSR 96-8p, 1996 WL 374184, at *7. SSR 96-8p remains in effect.

Although, pursuant to the amendment to § 404.1504, an ALJ is not required to provide an explanation for her decision to deviate from a disability determination from an agency with a closely related purpose and evaluation methodology, she is still required to "consider all the supporting evidence underlying the other governmental agency or nongovernmental entity's decision that [the SSA] receives in [the] claim in accordance with § 404.1513(a)(1) through (4). By reaching a disability determination contrary to that reached by the VA or other agency, the ALJ is effectively declaring that she considered the underlying evidence differently than the VA or reached a different conclusion as to it based on additional evidence, and she must explain exactly how she considered that underlying evidence that is available in the case record. Thus, the inclusion of the provision in the amended

12

version of § 404.1504 requiring the SSA to "consider all of the supporting evidence underlying" the other agency's decision that it receives appears to address the Fourth Circuit's concerns in *Bird* and satisfy the requirement in SSR 96-8p to "explain how any material inconsistencies or ambiguities in the case record were considered and resolved." Substantial evidence must support an ALJ's evaluation of the evidence underlying the agency's decision for her conclusion to enjoy the support of substantial evidence.

In this case, the record contains a Rating Decision from the VA dated October 4, 2018, assessing a combined schedular disability rating of 100%, effective September 30, 2018. Tr. at 192–95, 199–214, 216–31. The Rating Decision reflects the following impairment ratings: 50% for generalized anxiety disorder; 50% for obstructive sleep apnea; 30% for bilateral flat foot with metatarsalgia; 30% for left ventricular hypertrophy; 20% for right shoulder rotator cuff tendinosis with osteoarthritis of the glenohumeral and acromioclavicular joints; 10% for cubital tunnel syndrome of the ulnar nerve of the left upper extremity; 10% for cubital tunnel syndrome of the ulnar nerve of the right upper extremity; 10% for degenerative arthritis of the cervical spine; 10% for degenerative arthritis of the thoracolumbar spine; 10% for radiculopathy of the sciatic nerve of the left lower extremity; 10% for hypertension; 10% for nephrolithiasis; and 10% for tinnitus. Tr. at 199–200, 216–17. It indicates the decision was based on verification of service periods

13

from November 11, 2001 to September 29, 2018, service treatment and personnel records from November 11, 2001 to September 29, 2018, an application form received April 2, 2018, VA exams received July 24, 2018, and a VA letter dated September 21, 2018. Tr. at 201, 218.

The ALJ addressed the VA disability decision as follows:

> The Veterans Administration (VA) has granted the claimant a service connected disability of 50 percent due to anxiety (Ex. 4D/2). This assessment is not inherently valuable or persuasive. It is not a medical opinion because it does not describe what the claimant can do despite his impairment (20 CFR 404.1513(a)(2)). Additionally, disability programs under the VA and the Social Security Administration serve different purposes and have different definitions of disability.

Tr. at 20. She later noted:

> The claimant wrote in his Function Report that he is "100% VA Disabled" (Ex. 4E/1). His statement is supported by evidence of his VA disability rating (Ex. 4F). However, a VA disability rating is not inherently valuable or persuasive for the reasons previously stated: the VA rating is not a medical opinion as that term is defined in the regulations (20 CFR 404.1513(a)(2)), and VA ratings are different from the determination of disability for purposes of Social Security benefits.

Tr. at 24.

The ALJ referred to evidence on which the VA rating decision was based that was included in the Social Security record.[2] The ALJ referenced

---

[2] The record does not appear to contain all the evidence the VA considered in issuing its Rating Decision. However, 20 C.F.R. § 404.1504 only requires the ALJ consider "the supporting evidence underlying the other governmental agency's or nongovernmental entity's decision that [the SSA] receives in [the] claim."

14

Exhibit 2F, records from the Department of Defense dated October 3, 2017 to August 30, 2018, in noting Plaintiff's height and weight translated to a body mass index of 32 to 35, consistent with obesity. Tr. at 18 (referencing Ex. 2F/52). However, she concluded there was no evidence to indicate Plaintiff's obesity alone or in combination with other impairments had caused him to be unable to work. *Id.*

The ALJ acknowledged Plaintiff's reports in his VA medical record that he had experienced back pain since 1986 and shoulder pain for about 12 years; his complaints that his pain had progressively worsened over the years, affecting his mobility, stamina, and ability to use his right, dominant upper extremity; and his doctor's consistent findings of tenderness and tightness of his paraspinal muscles, decreased flexion and extension of his lumbar spine, and tenderness and decreased range of motion in his right shoulder. Tr. at 21 (citing 2F/40, 54, 86–90, 102–03). She conceded that "[d]egenerative changes to the spine and joints c[ould] produce pain that restricts one's tolerance for activity and that the evidence "establishe[d] that the claimant's severe impairments limit[ed] him." Tr. at 22. Nevertheless, the ALJ concluded "the record overall d[id] not establish that the claimant's limitations are so extreme and intractable that they preclude all manner of work," based on "no evidence of canal stenosis or nerve-root compromise in the claimant's spine," imaging reports showing "mild to moderate

15

degenerative changes and 'slight' slippage," evidence of normal posture and gait during examinations with most providers since 2018, demonstrated abilities to heel-walk and toe-walk, an absence of observations of claimant's use of a cane, and findings of normal overall strength and motor functioning, negative straight-leg raise, normal grip strength, no muscle atrophy, nontender knees, legs free of edema, good range of motion of the elbows, wrists, and ankles, and only mildly reduced knee flexion. *Id.* at 22–23 (citing Ex. 2F 54, 77, and 85, among other exhibits). She further noted Plaintiff's pain had been managed conservatively, as he used "ibuprofen on an as-needed basis" and engaged in stretching exercises. Tr. at 23 (citing Ex. 2F/132, among other exhibits). She referenced evidence of Plaintiff's sustained relief from a shoulder injection in 2009 and noted he had not received further injections since his alleged onset date. *Id.* (citing Ex. 2F/11, 88, 10F/2). She concluded the objective findings, including those in the records relied on by the VA in its disability decision, suggested Plaintiff could perform light work, could occasionally perform bilateral reaching and handling, could frequently perform most other postural activities, and would need to avoid exposure to hazards. Tr. at 24.

A review of the ALJ's decision supports the Magistrate Judge's conclusion that the ALJ explained how she considered the evidence underlying the VA's decision that was included in the SSA's record in

16

reaching her conclusion, satisfying the requirement in 20 C.F.R. § 404.1504, as well as SSR 96-8p's requirement to "explain how any material inconsistencies or ambiguities in the case record were considered and resolved."

In addition, a review of the VA's Rating Decision further supports the Magistrate Judge's reference to language in the Federal Register that the rating, considered alone, was "neither inherently valuable or persuasive" because it gave "little substantive information to consider." [ECF No. 19 at 12 (quoting 82 Fed. Reg. 5844-01, at 5,849)]. Although the Rating Decision includes reasons for the decision, it notes mostly mild objective findings (results of echocardiogram, x-rays showing degenerative arthritis, findings of reduced ROM, blood pressure readings, and lab studies) and cites impairments and symptoms without referencing records or medical opinions documenting or confirming the symptoms. *See* Tr. at 201–14, 218–31. Plaintiff's receipt of a 100% schedular rating, as opposed to a finding of 100% disability based on individual unemployability further supports the Magistrate Judge's conclusion.[3] *See* 38 C.F.R. §§ 4.16(a), 4.25 (discussing

---

[3] Under the schedule for rating disabilities, the VA looks to the average level of disability imposed based on a veteran's impairments. 38 U.S.C.A. § 1155 (2014) (providing that the schedule for rating disabilities is "based, as far as practicable, upon the average impairments of earning capacity resulting from such injuries in civil occupations."). It is a more generalized inquiry than that for individual unemployability. The VA's individual unemployability determination is very similar to SSA's definition of disability. *Compare* 20

17

schedular rating and individual unemployability determination).

The Magistrate Judge properly recognized a split in the Fourth Circuit as to the application of the holding in *Bird* with respect to VA disability decisions, cited evidence to support his conclusion that amendments to the regulations and rescission of SSR 06-03p changed the explanation requirements in *Bird*, and found the ALJ thoroughly discussed the evidence underlying the VA's disability rating, as required pursuant to the amended regulations. Accordingly, Plaintiff's objection is OVERRULED.

## II.    Steps Four and Five

In the Report, the Magistrate Judge concluded the step four heading stating "The claimant is capable of performing past relevant work as a XXX" was a scrivener's error corrected within the analysis, as the ALJ explained her reasons for concluding Plaintiff could perform past relevant work

---

C.F.R. § 404.1505 (defining disability "as the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months), *with* 38 C.F.R. § 4.16(a) (providing a total disability rating may be assigned "when the disabled person is, in the judgment of the rating agency, unable to secure or follow a substantially gainful occupation as a result of service-connected disabilities"). The inquiries for disability determination are also very similar for both the SSA disability and VA individual unemployability determinations. *Compare* 20 C.F.R. § 404.1520(a) and 416.920(a) (setting forth the five-step evaluation process) with 38 C.F.R. § 4.16(b) (providing the rating board is to include in its submission to the director "a full statement as to the veteran's service-connected disabilities, employment history, educational and vocational attainment and all other factors having a bearing on the issue").

("PRW") as a command and control specialist and purchasing agent. [ECF No. 19 at 13–14]. He noted the Fourth Circuit had not directly addressed whether reliance solely on vocational expert ("VE") testimony was sufficient pursuant to SSR 82-62 and that courts within the circuit were divided on the issue. *Id.* at 15. He stated he could not find the ALJ erred in the absence of binding precedent mandating that an ALJ not exclusively rely on a VE's testimony at step four, and considered Plaintiff's hearing testimony and the evidence in the record to support the ALJ's reliance on the VE's testimony. *Id.* at 16. He found that even if the ALJ erred in failing to identify a conflict between the *Dictionary of Occupational Titles* ("*DOT*") and the VE's testimony as to Plaintiff's PRW as a command and control specialist, such error did not prejudice him as he could still perform his PRW as a purchasing agent. *Id.* at 17. Finally, the Magistrate Judge determined any error in the ALJ's alternative step five finding was moot, as the step four finding ended the evaluation process. *Id.* at 18.

Plaintiff objects to the Magistrate Judge's conclusion that substantial evidence supported the ALJ's findings at steps four and five. [ECF No. 20 at 4]. He maintains the findings required pursuant to SSR 82-62 took place in the VE's head, and the ALJ erred in failing to question the VE as to how the assessed residual functional capacity ("RFC") would allow for performance of the PRW. *Id.*; ECF No. 25 at 2–3. He further contends the Magistrate Judge

incorrectly found no error as to conflicts between the *DOT* and the VE's testimony. *Id.* at 5.

The Commissioner maintains the Magistrate Judge thoroughly considered the issues and found them to be without merit. [ECF No. 21 at 6]. She maintains the Magistrate Judge appropriately relied on the reasoning in *Hamm v. Colvin*, No. 4:14-cv-3590, 2016 WL 536742, at *3 (D.S.C. Feb. 11, 2016) (citing 68 F.R. 51152, 2003 WL 22001943 (Aug. 26, 2003)), finding the amendment to 20 C.F.R. § 404.1560(b)(2) explicitly provided for a vocational expert to offer evidence concerning the demands of a claimant's PRW and whether those demands exceeded the claimant's RFC. *Id.* at 7. She notes that all decisions to the contrary were based on a case issued prior to the amendment to the regulation. *Id.* at 7–8. She asserts Plaintiff's arguments as to conflicts between the VE's testimony and the *DOT* are moot for the reasons explained by the Magistrate Judge. *Id.* at 9.

Pursuant to SSR 82-62, an ALJ must consider a claimant's PRW "carefully to assure that the available facts support a conclusion regarding the claimant's ability or inability to perform the functional activities required in this work." This is true because a claimant will be found "not disabled" at step four if his RFC allows him to meet the physical and mental demands of his PRW as actually performed or as described in the *DOT* as customarily performed throughout the economy. SSR 82-62. An ALJ is required to make

three specific factual findings to support a conclusion that a claimant can perform PRW: (1) a finding of fact as to the claimant's RFC; (2) a finding of fact as to the physical and mental demands of the claimant's PRW; and (3) a finding of fact that the claimant's RFC would allow him to perform his PRW. *Id.*

In 2003, more than 10 years after the SSA's issuance of SSR 82-62, it amended the regulations to specify as follows:

> Determining whether you can do your past relevant work. We will ask you for information about work you have done in the past. We may also ask other people who know about your work. (See § 404.1565(b)). We may use the services of vocational experts or vocational specialists, or other resources, such as the "Dictionary of Occupational Titles" and its companion volumes and supplements, published by the Department of Labor, to obtain evidence we need to help us determine whether you can do your past relevant work, given your residual functional capacity. A vocational expert or specialist may offer relevant evidence within his or her expertise or knowledge concerning the physical and mental demands of a claimant's past relevant work, either as the claimant actually performed it or as generally performed in the national economy. Such evidence may be helpful in supplementing or evaluating the accuracy of the claimant's description of his past work. In addition, a vocational expert or specialist may offer expert opinion testimony in response to a hypothetical question about whether a person with the physical and mental limitations imposed by the claimant's medical impairment(s) can meet the demands of the claimant's previous work, either as the claimant actually performed it or as generally performed in the national economy.

20 C.F.R. § 404.1560(b)(2); 68 F.R. 51153, 2003 WL 22001943 (26 Aug. 2003) (providing "[t]hese clarifications address issues of responsibility raised by some courts in recent cases; clarify that we may use vocational experts (VEs),

vocational specialists (VSs), or other resources to obtain evidence we need to help us determine whether your impairment(s) prevent you from doing your past relevant work . . .").

A review of the record and the ALJ's decision supports the Magistrate Judge's conclusion that the ALJ engaged in the proper inquiry and made the requisite findings of fact pursuant to SSR 82-62. The ALJ's failure to identify the PRW she found Plaintiff could perform in the heading was a mere scrivener's error that she corrected in her explanation. *See* Tr. at 24–25. Her decision contains a finding of fact as to Plaintiff's RFC. Tr. at 20. She relied on the VE's testimony and the *DOT*'s description of the job of command and control specialist, noting it required sedentary exertion and a specific vocational preparation ("SVP") of 5, as well as the job of purchasing agent, *DOT* No. 162.157-038, noting it required light exertion as generally performed and sedentary exertion as actually performed and an SVP of 7. Tr. at 24. The ALJ cited to Exhibits 9D, 1E, 5E, and the hearing record[4] to support her findings as to the physical and mental demands of Plaintiff's PRW. *Id.* She specified she had compared Plaintiff's RFC with the physical and mental demands of his PRW and concluded he was able to perform it as

---

[4] These citations refer to Plaintiff's certified earnings record and his representations in an adult disability report, a work history report, and hearing testimony. *See* Tr. at 31–82, 250–51, 254–62, 281–89.

actually and generally performed. *Id.* She noted her conclusion was based on the VE's representations during the hearing. Tr. at 24–25.

Although judges in this district have reached different conclusions as to whether an ALJ may rely exclusively on a VE's testimony to satisfy the requirements in SSR 82-62 and meet the burden at step four, 20 C.F.R. § 404.1560(b) supports a finding that they may. Furthermore, the ALJ did not rely exclusively on the VE's testimony, but also referenced Plaintiff's representations in his reports and testimony to support a finding that he could meet the physical and mental demands of his PRW. *See* Tr. at 24. The ALJ made specific inquiries as to the requirements of Plaintiff's PRW during the hearing, and the VE noted he had reviewed Plaintiff's descriptions of his PRW in the file and distinguished between how his jobs were actually and generally performed. *See* Tr. at 41–44, 65, 72. The VE's reasoning for his conclusions did not take place in his head alone, as he specified Plaintiff performed the job of purchasing agent at the sedentary exertional level based on his representation in the file. Tr. at 72. These facts set this case apart from *Burnett v. Saul*, No. 4:19-cv-969-DCN-TER, 2020 WL 5793356, at *9 (D.S.C. Sept. 29, 2020), where the court specifically found "neither Burnett nor the VE testified about how Burnett actually performed her customer service work." Given the foregoing, the Magistrate Judge reached a well-

reasoned conclusion that substantial evidence supported the ALJ's finding at step four.

The Magistrate Judge did not err in declining to specifically address Plaintiff's allegations that the ALJ failed to resolve conflicts between the VE's testimony and the *DOT's* descriptions of the job of command and control specialist and jobs identified in the alternative step five finding. Pursuant to 20 C.F.R. § 404.1560(b)(3), if a claimant has the RFC to do any of his PRW, he is not disabled. Such a determination is made without regard to age, education, work experience, or whether the PRW exists in significant numbers in the economy. *Id.* Thus, even if the ALJ failed to resolve a conflict between the VE's testimony as to the job of command and control specialist, his finding that Plaintiff could perform the job of purchasing agent was sufficient to end the inquiry at step four. The Magistrate Judge appropriately concluded that any error in the alternative finding at step five was inconsequential, as substantial evidence supported the finding that Plaintiff was not disabled at step four. *See* 20 C.F.R. § 404.1520(a)(4) ("If we can find that you are disabled or not disabled at a step, we make our determination or decision and we do not go on to the next step.").

The Magistrate Judge properly concluded the ALJ complied with the requirements of SSR 82-62 and that substantial evidence supported her

24

finding that Plaintiff was able to perform PRW and not disabled at step four. Accordingly, Plaintiff's objection is OVERRULED.

## III.   Clear Error

Having reviewed Plaintiff's specific objections de novo, the court considers the remainder of the Report for clear error. *Staley*, 2007 WL 8211181, at *1 (citing *Diamond*, 416 F.3d at 315, *Camby*, 718 F.2d at 200; *Orpiano*, 687 F.2d at 47). This court finds no clear error in the Report, adopts the Report in its entirety, and incorporates the Report by reference.

On August 3, 2021, Plaintiff filed a Notice of Supplemental Authority that states as follows: "Plaintiff submits *Collins v. Yellen*, 141 S. Ct. 1761 (2021), relying on *Seila Law, LLC v. Consumer Financial Protection Bureau*, 140 S. Ct. 2183 (2020), as supplemental controlling authority on the constitutionality of the Commissioner's decision." [ECF No. 23 at 1]. On August 6, 2021, Plaintiff filed a second supplement, a July 8, 2021 memorandum opinion for the Deputy Counsel to the President regarding the Constitutionality of the Commissioner of Social Security's Tenure Protection. [ECF No. 24]. Plaintiff did not raise an issue as to the constitutionality of the Commissioner's appointment or decision in his pleadings and offered no explanation as to how the cited supplemental authority applied to the Report. *See generally* ECF Nos. 13, 17, 20, 23, 24, 25. Because Plaintiff's pleadings fail to present specific written objections as to this issue, the undersigned has

reviewed the decision and found no clear error on the face of the record as to the constitutionality of the Commissioner's appointment or decision.

## CONCLUSION

After a thorough review of the Report, the applicable law, and the record in this case, the court finds no clear error in the Report. The court has reviewed de novo each part of the Report to which Plaintiff specifically objected, and hereby adopts the Report and Recommendation, ECF No. 19, in its entirety and incorporates it by reference herein. For the reasons discussed above, and in the Report, the court affirms the Commissioner's decision.

IT IS SO ORDERED.

December 28, 2021                              Sherri A. Lydon
Florence, South Carolina                       United States District Judge